# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DANIELLE CLAY, an individual, | Case No.: 2:09-cv-02040-RLH-RJJ |
| Plaintiff, | **O R D E R** |
| vs. | (Motion for Summary Judgment–#29) |
| COUNTRYWIDE HOME LOANS, INC., a New York Corporation; RECONTRUST COMPANY, a Nevada Corporation, | |
| Defendants. | |

Before the Court is Defendant Countrywide Home Loans, Inc.'s **Motion for Summary Judgment** (#29, filed Nov. 1, 2010). The Court has also considered Plaintiff Danielle Clay's Opposition (#33, filed Dec. 6, 2010), and Countrywide's Reply (#36, filed Jan. 10, 2011).

**BACKGROUND**

This dispute arises from a mortgage loan transaction between Clay and Countrywide. In February 2007, Clay purchased a new construction home located at 6457 Lovett Canyon Street in Las Vegas, Nevada. Clay financed the $345,141.00 purchase price by executing a promissory note and a home equity line of credit for $276,112.00 and 69,028.00 respectively, both in favor of Countrywide. Clay secured these loans with first and second deeds of trust on her new home, both also in favor of Countrywide.

1

AO 72
(Rev. 8/82)

In December 2007, Countrywide informed Clay that Clark County had reassessed her property and increased her property taxes. Because of this increase, Countrywide claimed, there was an escrow shortage in Clay's account from March 2007 to December 2007. Therefore, Clay's monthly payment would increase to both cover the new taxes and the resulting escrow shortfall. Clay made these increased payments for a time, but in November 2008, Clay defaulted on her mortgage and has not made any payments since. After Clay defaulted, Countrywide recorded a Notice of Default and Election to Sell on March 20, 2009. Clay then filed suit in the Eighth Judicial District of the State of Nevada alleging (1) unfair lending practices, (2) fraudulent misrepresentation, (3) promissory estoppel, (4) wrongful foreclosure/declaratory relief, (5) recision of contract, and (6) intentional and/or negligent infliction of emotional distress. (Dkt. 1, Compl.) Countrywide subsequently removed the case to this Court, after which the Court dismissed all claims save the fraud and promissory estoppel claims. (Dkt. #21, Hr'g Mins.) Countrywide has now filed a motion for summary judgment on Clay's remaining claims. For the reasons discussed below, the Court grants Countrywide's motion.

**DISCUSSION**

**I.     Legal Standard**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441

(9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).  "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"  *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–89 (1968)).  In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party.  *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact.  *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).  "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.  The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Bank of America v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

The Court would also like to take this opportunity to remind Clay's counsel that when in federal court, the Federal Rules of Civil Procedure apply absent rare circumstances, not the Nevada Rules of Civil Procedure.

/

/

## II.   Analysis

### A.   Fraud

In order to succeed on a claim for fraud, Clay must prove each of the following: (1) a false representation by Countrywide, (2) Countrywide's knowledge or belief that the representation was false, or that Countrywide had an insufficient basis for making the representation, (3) Countrywide's intent to induce Clay to act or refrain from acting in reliance on the misrepresentation, (4) Clay's justifiable reliance on the misrepresentation, and (5) damages resulting from that reliance. *Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588, 592 (Nev. 1992). Clay, however, has failed to demonstrate any of these elements, most importantly a false representation.

In her complaint, Clay contends that Countrywide misrepresented her monthly payments. Additionally, in her response to the motion, Clay contends that Countrywide misrepresented the shortfall in her escrow account. Neither contention is accurate. Countrywide dispels Clays contentions by presenting the Tax Notice that Clay signed before closing on her loan. (Dkt. #29, Mot. Ex. B.) The Tax Notice explains that Countrywide is not liable for increases in property tax and that Clay's taxes would likely "take a big jump" when her property was reassessed. (*Id.*) Further, Clay checked the box saying that she wished to only impound taxes based on the unimproved assessment (the assessment made before a house was built on the property), which states "I realize that my taxes may increase substantially during the second year, which would make my monthly payments increase accordingly." (*Id.*) Clay cannot legitimately claim that Countrywide did not warn her that her payments might increase after having signed this document. *See Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002) ("general rule is that one who signs a contact is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument.") (internal quotation omitted).

Although Clay's claim that Countrywide misrepresented the amount of the shortfall in her escrow account makes its first appearance in her response to the motion, the Court will quickly address it. Clay claims that she does not understand why there was a shortfall in her

AO 72
(Rev. 8/82)

1  escrow account based on taxes.  Countrywide, however, adequately explains the escrow shortfall
2  by providing an accounting of Clay's escrow account.  (Dkt. #36, Reply Ex. E, Loan History.)
3  This accounting demonstrates that Clay did not pay her taxes as she claimed, but that her lender
4  did.  (*Id.*)  Clay only deposited $356.18 at the time of closing for taxes.  Since her original
5  payments only covered insurance and the interest on her principal balance, this created a shortfall
6  in her escrow account as Countrywide paid her taxes.  Before this deficiency occurred,
7  Countrywide even provided Clay an estimate showing that this shortfall was likely to occur.  (Dkt.
8  #29, Mot. Ex. C, Escrow Acct. Review.)  Because Countrywide neither misrepresented the escrow
9  shortfall nor misrepresented Clay's eventual payments and tax liability, Clay's claim for fraudulent
10 misrepresentation fails as a matter of law.

      **B.**      **Promissory Estoppel**

To prove promissory estoppel Clay must show: "(1) the party to be estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; (4) [she] must have relied to [her] detriment on the conduct of the party to be estopped." *Pink v. Busch*, 100 Nev. 684, 689, 691 P.2d 456, 459 (1984).  Here, Clay claims that Countrywide represented that she would have a lesser payment than she eventually owed.  As shown above, this is inaccurate.  The uncontroverted evidence shows that Countrywide made no such promise.  Countrywide specifically informed Clay that her "monthly payments may increase substantially" because of tax increases and any resulting escrow shortfall.  Therefore, Clay has not met her burden to set forth specific facts showing a genuine issue for trial and so the Court grants summary judgment on Clay's remaining claims.

/
/
/
/

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Countrywide's Motion for Summary Judgment (#29) is GRANTED. The Clerk of the Court is directed to close this case.

Dated: April 21, 2011.

_____
ROGER L. HUNT
Chief United States District Judge